UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>— against —<br><br>TYQUAN JACKSON,<br><br>Defendant. | 19-cr-356 (ARR)<br><br>**Not for print or electronic publication**<br><br>**Opinion & Order** |

ROSS, United States District Judge:

Defendant Tyquan Jackson moves for release on bail because he is in a high-risk category for developing a severe case of COVID-19. *See* Ltr. Mot. for Release from Custody, ECF No. 47 ("Def.'s Mot."). The government opposes. *See* Government's Resp. to Def.'s Mot., ECF No. 48 ("Gov't Resp.") The defendant's motion is granted, subject to the conditions set forth below.

Jackson is charged with one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). *See* Indictment ¶ 1, ECF No. 11. On July 24, 2019 Magistrate Judge Kuo ordered Jackson released on a $50,000 bail bond. *See* Order Setting Conditions of Release, ECF No. 5. Jackson's bail was revoked on November 13, 2019 because of his refusal to appear, and on December 9, 2019 I denied his subsequent application for bond. *See* Order of Detention, ECF No. 23. Jackson's counsel represents that he was "ready, willing and able" to appear at all court dates, and "[h]is non-production can be blamed solely on the failure of the United States Marshal Service to produce him for court." *See* Def.'s Mot. 2 n. 4. Since the revocation of bail, Jackson has been detained at the Metropolitan Detention Center ("MDC").

Jackson now argues that I should grant him bail because he is in danger of contracting COVID-19 in the close quarters of MDC, and his medical condition renders him particularly vulnerable to developing serious symptoms of the virus.. *See* Def.'s Mot. 1–2. Jackson has asthma, for which he uses a prescribed inhaler. *See id.* at 1 n. 1. The Centers for Disease Control ("CDC") has identified people with asthma as facing a "higher risk for severe illness from COVID-19." CDC, *Coronavirus Disease 2019 (COVID-19) People Who Are At Higher Risk* (Apr. 2, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. As of April 15, 2020, five MDC Brooklyn inmates and sixteen staff members have tested positive for COVID-19. *See* Decl. of Liutenant Commander D. Jordan ¶ 46, *Chunn v. Edge*, 20-cv-1590, (Apr. 15, 2020). The government represents that BOP officials are taking robust steps to combat the spread of COVID-19, *see* Gov't Resp. 7, the fact remains that Jackson is currently confined in close quarters with many other people and would not be able to follow recommended social distancing practices. The BOP is in the midst of a "national 14 day action plan to increase social distancing in the facilities" but it is unclear what this will look like at MDC, where 1700 inmates are housed in two-man cells or in dormitory housing united of up to 70 inmates with shared toilets and sinks.  *See* Aff. of Dr. Jonathan Giftos, Def.'s Mot. Ex. A, ¶ 15, ECF No. 47-1.

Under the Bail Reform Act, the court must order a defendant's pretrial release "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). "If the court determines that a defendant's release on an unsecured bond presents a risk of flight, . . . the law still favors pre-trial release[.]" *United States v. Sabhnani*, 493 F.3d 63, 75 (2d Cir. 2007). Such release would be "subject to the least restrictive further condition, or combination of conditions, that [the court] determines will reasonably assure the appearance of the person as

2

required and the safety of any other person and the community[.]" § 3142(c)(1)(B). In determining whether release on bail is appropriate, the court must consider several factors:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including--
> > (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
> > (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

§ 3142(g).

> In addition, a bail hearing
>
> may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community.

§ 3142(f). Separately from this provision, the court may "permit the temporary release of [an inmate], in the custody of a United States marshal or another appropriate person, to the extent that the [court] determines such release to be necessary for preparation of the person's defense or for another compelling reason." § 3142(i).

I find it appropriate to reopen the bail determination in this case under § 3142(f). I denied Jackson's previous bail application on December 10, 2019. The COVID-19 crisis—and the

3

heightened risk that it poses to Jackson as an asthma sufferer detained in a facility where the virus is present—is new information that has material bearing on whether any conditions of release will reasonably assure Jackson's appearance and the safety of the public. *See* § 3142(f). The conditions of release will include strict home confinement with location monitoring which, combined with Jackson's incentive to stay at home to avoid contracting COVID-19 and developing complications, will reasonably assure his appearance and the public safety.

I also find it appropriate to permit Jackson's temporary release for a "compelling reason" under § 3142(i). A court in the Southern District has concluded that "[c]ompelling reasons may exist . . . where the defendant's serious medical conditions warrant release[.]" *United States v. Stephens*, No. 15-cr-95 (AJN), 2020 WL 1295155, at *2 (S.D.N.Y. Mar. 19, 2020). That same court also concluded that "family members may constitute 'appropriate persons' where the defendant is released to relatives and placed under house arrest." *Id.* Here, while I have seen no indication that Jackson's asthma itself is especially serious, he is at risk of contracting a novel virus and developing complications because of his asthma and the confined environment of the detention facility. *See* Order at 1, *United States v. Padin*, No. 20:CR-135-5 (JMF) (Apr. 8, 2020), ECF No. 84 (granting release to defendant with asthma "in light of the dire circumstances presented by COVID-19"). This risk is heightened because of the confirmed COVID-19 cases that have already emerged within MDC. If released, Jackson would be under an order of incarceration at a residence approved by pre-trial services, with precautions taken to protect any family members he may be living with from potential exposure.

I agree with the government that Jackson does not have a good track record of complying with conditions of bail and appearing in court as required. He does have a significant criminal history and he has missed court appearances. That is why I denied his previous request for bail.

But circumstances have changed drastically. A global pandemic has put Jackson at high risk for a serious, potentially fatal, illness. The government states Jackson should not be released now because, "There is nothing to indicate that this time would be any different." Gov't Resp 4. This statement ignores the simple reality that life is very different now from the way it was just a few months ago for many New Yorkers, particularly those vulnerable to severe cases of COVID-19. Jackson has a strong incentive to stay at home and maintain social isolation: just going outside would put him at risk for a deadly disease.

My prior determination that Jackson should not be released on bail does not prevent me from reconsidering in light of new information and compelling circumstances. The occasional need for such reconsideration is why § 3142(f) and § 3142(i) exist. Bail determinations must be made on a highly individualized, case-by-case basis, examining the factors of § 3142(c)(1)(B) as they apply to the individual defendant at a moment in time. *See United States v. Chambers*, No. 20-CR-135 (JMF), 2020 WL 1530746, at *1 (S.D.N.Y. Mar. 31, 2020) ("'[W]hether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case.'" (quoting *United States v. Cox*, No. 2:19-CR-271 (RFB) (VCF), 2020 WL 1491180, at *2 (D. Nev. Mar. 27, 2020)).

Therefore, I am not persuaded by the government's string of recent cases where judges have declined to release defendants concerned about the coronavirus pandemic. *See* Gov't Resp. 8–11. The context of each case is different. Jackson, who is charged as a felon in possession after allegedly tossing a gun into a driveway, is differently situated than somebody who is charged with the same crime for "firing [his gun] at another car during a road rage incident." *See United States v. Passley*, No. 15-CR-287-20 (WFK), 2020 WL 1815834, at *1 (E.D.N.Y. Apr. 9, 2020). The nature and circumstances of Jackson's crime are different from the nature and circumstances of a

5

crime involving "at least two gunpoint robberies and an attempted slashing of another inmate while detained in jail[.]" *Chambers*, 2020 WL 1530746, at *1.

Jackson is also differently situated from some other defendants applying for release because he has a specific medical condition that renders him at risk for a severe case of COVID-19. Some of the orders the government cites do not include any discussion of the defendant's individual health circumstances. *See United States v. Warren*, No. 00-CR-1094 (AMD); *United States v. Martin*, Case No. 19-CR-221 (RJD), Order, dated April 6, 2020. In one case, the defendant suffered from a stomach ailment, a medical condition not known to increase risks associated with COVID-19. *United States v. Amador-Rios*, No. 18-CR-398 (S-5) (RRM), 2020 WL 1849687, at *1 (E.D.N.Y. Apr. 12, 2020). The risks of COVID-19 vary based on individual health circumstances, and conditions that are associated with severe COVID-19 cases are a weighty factor supporting release. *See, e.g.,* Order at 3, 5–6, *United States v. McKenzie*, No. 18 Cr. 834 (PAE) (S.D.N.Y. Mar. 30, 2020), ECF No. 443 (finding exceptional reasons justified release under 18 U.S.C. § 3145(c) of defendant with asthma detained in facility with multiple confirmed cases of COVID-19); Order at 2–4, *United States v. Roman,* No. 19 Cr. 116 (KMW) (S.D.N.Y. Mar. 27, 2020), ECF No. 155 (finding exceptional reasons justified release under § 3145(c) of defendant when he had hypertension and history of brain aneurysm and was detained in facility with COVID-19 cases); see also Order at 1, *United States v. Padin*, No. 20-CR-135-5 (JMF) (S.D.N.Y. Apr. 8, 2020), ECF No. 84 (finding "compelling reason" justified temporary release on bail under § 3142(i) because defendant's asthma placed him at heightened risk from COVID-19).

Finally, I must evaluate Jackson's case based on the information currently available about the risks of exposure to the coronavirus at MDC and in the community. The situation changes from day to day. On March 30, there was only one confirmed case of COVID-19 at MDC. *See United*

*States v. Warren*, No. 00-CR-1094 (AMD) at *2. As of April 15, 2020, five MDC inmates and sixteen staff members have tested positive for COVID-19. *See* Decl. of Liutenant Commander D. Jordan ¶ 46, *Chunn v. Edge*, 20-cv-1590, (Apr. 15, 2020). These numbers are likely far from the actual total number of cases, as testing is so limited. *See* Frank G. Runyeon, *Prison Says It Tested Just 2 More Inmates Despite Virus Cases*, Law360 (Apr. 1, 2020, 10:10 PM), https://www.law360.com/newyork/articles/1259489. Nobody can predict the exact course of this pandemic. Doctors can give insight into worst case scenarios, and prison officials can take steps to try to mitigate the spread of disease. I must do my best to evaluate the case that is before me. I am not satisfied that the measures currently in place sufficiently protect Jackson's health, and thus, I find a compelling reason to order his release into custody of a responsible person designated by pre-trial services, where I believe he will not pose a flight risk or a danger to the community.

As the government has not requested a hearing, I decline to hold one, nor do I see a need for a hearing in this case, as the relevant facts are apparent in the parties' papers. *See* § 3142(f). I order Jackson released from MDC's custody, subject to the condition of 24-hour home incarceration at a residence approved by the Pretrial Services department, to be enforced by location monitoring using specific technology to be determined by the Pretrial Services Department. Jackson will additionally be subject to all the conditions in Judge Kuo's prior bail order, as well as any other conditions of release, including a 14-day quarantine, determined by the Honorable James Orenstein, United States Magistrate Judge.

SO ORDERED.

Dated:      April 17, 2020                        _____/s/_____
            Brooklyn, New York                    Allyne R. Ross
                                                  United States District Judge