# JAMES LAYTON KOENIG
## ATTORNEY AT LAW

305 BROADWAY, SUITE 1001
NEW YORK, NEW YORK 10007
TELEPHONE (212) 822-1439
FAX (212) 822-1441

October 24, 2020

The Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Tyquan Jackson
      Criminal Docket No. 19-356 (ARR)

Dear Judge Ross,

The defense respectfully submits this letter in opposition to the government's letter motion, dated October 21, 2020, requesting the revocation of the defendant's bail. *See* ECF Dkt. No. 68 ("Motion to Revoke Defendant's Bail"). For the reasons set for below, the motion should be denied.

Procedural Background

The defendant, Tyquan Jackson, was released from jail on April 17, 2020, pursuant to the Court's order granting his release contingent on strict bail conditions. *See* ECF Dkt. No. 50 ("Court's Order").

In the intervening seven months Mr. Jackson has been confined to his home subject to electronic monitoring; abiding by all the conditions of his release. This matter is now scheduled for trial to begin on December 7, 2020.

In April of this year much of our country, and New York City in particular, was reeling from the the global COVID-19 pandemic. Inmates in federal and state correctional facilities were especially susceptible to viral infection. On April 15, 2020, prior counsel moved for Mr. Jackson's release contending that the defendant's health made him more vulnerable to suffer severe consequences were he to be infected by COVID-19. *See* ECF Dkt. No. 47 ("Def. 2nd Motion"). The Court granted bail based upon this increased threat to Mr. Jackson's health. *See* ECF Dkt. No. 50 ("Court's Order").

1

The government now moves the Court to revoke Mr. Jackson's bail *not* based on his failure to comply with the conditions of his release. Indeed, Mr. Jackson has abided by all of the parameters this Court set for his release and at present there is no contention from the government that he has violated the terms of his release.

Rather, the government's present argument rests entirely on alleged behavior prior to Mr. Jackson's release from jail. Specifically, the government directly accuses Mr. Jackson of lying to the Court and to his prior counsel about being asthmatic. The government grounds its argument on an April 13, 2020, recorded phone call the defendant made from the Metropolitan Detention Center (MDC) to his girlfriend. In that phone call, Mr. Jackson and his girlfriend discuss his health and he mentions getting an "asthma pump" which elicited some measure of incredulity from his girlfriend. In point of fact, on March 20, 2020, Mr. Jackson was prescribed an albuterol inhaler by MDC medical staff.

On April 15, 2020, prior counsel moved for bail based in part on the COVID-19 pandemic. *See* ECF Dkt. No. 47 ("Def. 2nd Motion"). Significant, in the light of the government's contention that Mr. Jackson misled the Court, the motion did not include any medical records documenting a history of asthma nor did that motion include an affidavit from Mr. Jackson contending that he was asthmatic. *Id.* Indeed, that motion conceded that Mr. Jackson was not on the MDC's list of COVID-19 vulnerable inmates. *Id.* The only factual statement in that motion regarding Mr. Jackson's condition was tucked in a footnote; "[a]ccording to Mr. Jackson and his family, he was recently prescribed an asthma inhaler by the medical staff at the MDC to be used on an 'as needed' basis". *Id.* That statement was absolutely true. The defendant's medical records indicate that Mr. Jackson was seen by medical staff at MDC on March 20, 2020 when he was prescribed an albuterol inhaler, and on March 26, 2020 there is an entry regarding asthma. *See* ECF Dkt. No 69 ("Attachment B").

Not once in that April 15 bail motion does Mr. Jackson contend that the was asthmatic prior to the March 20 prescription of an albuterol inhaler and he never contended that his symptoms were severe. *See* ECF Dkt. No. 47 ("Def. 2nd Motion"). Any assertions that asthma placed him at a greater risk from COVID-19 are contained in an affidavit from Dr. Jonathan Giftos regarding the general state of the COVID-19 pandemic and its effect on certain vulnerable populations. *Id*

Defendant's Present Conditions of Release:

Since his release from jail in April, Mr. Jackson has been on supervised release overseen by Pre-Trial Services which includes home-confinement and electronic monitoring. He has been in full compliance with the conditions of his release. In addition, Mr. Jackson has strong ties to New York City as he has spent his entire life here and has a large extended family all of whom reside in Brooklyn. Over the last seven months Mr. Jackson's behavior has demonstrably shown that he is neither a flight risk nor a danger society.

As a final thought, it is important to note that since this matter is set to commence trial in six weeks, vital Sixth Amendment concerns are implicated. As the Second Circuit recently emphasized, "the right to consult with legal counsel about being released on bond, entering a plea, negotiating and accepting a plea agreement, going to trial, testifying at trial, locating trial witnesses, and other decisions confronting the detained suspect, whose innocence is presumed, is a right inextricably linked to the legitimacy of our criminal justice system." *Federal Defenders of New York, Inc. v. Bureau of Prisons*, No. 19- 1778 (2d Cir. Mar. 20, 2020). In recognition of this vital right, BOP regulations instruct that detention center wardens "shall provide the opportunity for pretrial inmate-attorney visits on a seven-days-a-week basis." 28 C.F.R. § 551.117(a).

Currently, if Mr. Jackson remains at liberty he is available to come to my office for meetings as often as possible, a need that will only increase as the trial date draws closer. If this Court were to revoke Mr. Jackson's bond and place him back in jail properly preparing for trial will prove extraordinarily difficult. Although, MDC has "re-opened" and is now allowing in-person counsel visits, those visits are severely constrained and each visit is limited to one hour.[1] At best, I would likely be able to meet with Mr. Jackson for one hour per week if he were detained at MDC. That is a woefully inadequate amount of time to effectively prepare Mr. Jackson for trial, thereby severely inhibiting his constitutional rights.

Conclusion:

The April 15, 2020 bail motion did not contain any lies or factual misstatements by Mr. Jackson. There is nothing new in the government's motion to indicate that he is a flight risk or a danger to the community. Indeed, since his release in April, Mr. Jackson has put together seven months of full compliance and the government cannot point to any facts otherwise. Further, with Mr. Jackson at liberty he will be able to meaningfully prepare for trial with counsel thereby safeguarding his Sixth Amendment rights. The defense respectfully asks that the Court deny the government's motion.

Respectfully submitted,

James L. Koenig

cc: Clerk of the Court (by ECF)
AUSA Jonathan Siegel (by ECF and Email)
U.S. Pretrial Services Officer Ramel Moore (by Email)

---

[1] I understand the MDC counsel visiting rules are very fluid and seem to change from week to week. It is entirely possible that if COVID-19 situation continues to worsen, counsel visits could be curtailed if not altogether suspended.