SUPREME COURT OF THE STATE OF NEW YORK

COUNTY OF KINGS : CRIMINAL TERM : PART 21

- - - - - - - - - - - - - - - - - - -X

THE PEOPLE OF THE STATE OF NEW YORK    :   INDICTMENT NO.
                                           3599/2015
            - against -                :

TYQUAN JACKSON AND RYAN FORDE          :

                        DEFENDANTS    :    PLEA

- - - - - - - - - - - - - - - - - - -X

                        320 JAY STREET
                        BROOKLYN, NEW YORK 11201

                        JUNE 15, 2016


BEFORE:   HONORABLE JOHN G. INGRAM,
                              JUSTICE


APPEARANCES:

            KENNETH P. THOMPSON, ESQ.
                District Attorney, Kings County
                BY:  DANIELLE REDDAN, ESQ.
                     ROSS YAGGY, ESQ.
                     Assistant District Attorneys


            CRAIG NEWMAN, ESQ.
                Attorney for Defendant Forde
                26 Court Street - Suite 1406
                Brooklyn, New York 11242


            CHRISTOPHER BOOTH, ESQ.
                Attorney for Defendant Jackson
                11 Broadway - Suite 1504
                New York, New York 10004


                        LAUREN K. GANZMAN
                        SENIOR COURT REPORTER

TJ004285

```
                        PROCEEDINGS                2
```

1          THE CLERK:  This is an add-on to the Part 21

2    calendar, number five, Indictment 3599 of 2015, in the

3    matter of Tyquan Jackson and Ryan Forde.

4          Counsel, your appearance.

5          MR. NEWMAN:  On behalf of Mr. Forde, Craig

6    Newman, 26 Court Street, suite 1406, Brooklyn, New York.

7          Good afternoon.

8          MR. BOOTH:  Lipman and Booth, by Christopher

9    Booth, for Tyquan Jackson.

10         Hi, Judge.

11         MS. REDDAN:  Danielle Reddan, R-E-D-D-A-N, for

12   the Office of the District Attorney.

13         MR. YAGGY:  Ross Yaggy, Y-A-G-G-Y, for the Office

14   of the District Attorney.

15         Good afternoon.

16         THE COURT:  Good afternoon, all counsels.

17         I understand counsel wanted to discuss

18   scheduling, so I take it you'll waive your clients'

19   appearances?

20         MR. NEWMAN:  Yes, Judge.

21         MR. BOOTH:  Yes, sir, waiving my client's

22   appearance.

23         THE COURT:  I know it's going to be sent to me

24   for hearings, we'll start at 2:15, 2:20 today, and it's a

25   two-witness hearing; is that right?

TJ004286

PROCEEDINGS                              3

1        MS. REDDAN:  No, your Honor.  We have two

2   witnesses who are here today.  We have an additional

3   witness tomorrow, who will be very short tomorrow.  He's

4   notified.  And then I believe defense counsel also stated

5   they have a witness for tomorrow on standby as well.

6        THE COURT:  Great.  As you probably know, because

7   the great line is very quick around here, we just had a

8   verdict in a case, so I'm open now.  I do understand that

9   it's sent to me for hearings only today and tomorrow, that

10  counsel, and I'm not certain whether it's all counsel or

11  some counsel, do have issues regarding trial date or dates,

12  so I understand in order to save some time today, counsel

13  has asked we have this scheduling conference and,

14  certainly, I will keep the case for trial.

15       I see from the ready sheet that defendant Jackson

16  is offered CPW 2, three-and-a-half years' determinate

17  sentence, with five-years' post-release supervision.  I

18  take it it's GORA registration, et cetera, and I see that

19  defendant Forde, F-O-R-D-E, is offered Attempted CPW 2, is

20  that five years?

21       MS. REDDAN:  Five-years' jail, five-years'

22  post-release supervision; yes, Judge.

23       And just to preserve the record, there wasn't

24  enough space on there, so I made an error on Jackson's

25  offer.  Criminal Possession of a Controlled Substance in

- LKG -

1    the Fifth Degree and one-and-a-half-years' jail, two-years'

2    post-release supervision, $1,654 in forfeiture, and those

3    to run concurrent to each other, and he was also sentenced

4    on two BTC cases a couple months ago to two years, and we

5    ask those to run concurrent to those sentences as well.

6              THE COURT:  Sounds like a nice package.

7              MS. REDDAN:  Yes.

8              THE COURT:  In other words, he would be doing a

9    total of three-and-a-half years and everything is wrapped

10   into it?

11             MS. REDDAN:  Four convictions, yes.

12             THE COURT:  And of, course, the post-release

13   supervision is five years and there is a forfeiture of

14   $1,654 U.S. dollars.  As we used to say in the Bronx,

15   people were going to buy a car, that's why they had so much

16   cash on them.  Do you remember those days?

17             MR. BOOTH:  I do, Judge, very well.

18             THE COURT:  Counsel, we can go off the record and

19   possibly discuss this trial, the dates, or if you want to

20   stay on the record?

21             MR. NEWMAN:  Just on the record, Judge, I think

22   the change in offer today is for my client?

23             MS. REDDAN:  We're going to give a one-time offer

24   to defendant Forde for CPW 3, three to six years.

25             THE COURT:  Oh, three to six now?

PROCEEDINGS                    5

1            MS. REDDAN:  It's a one-time offer for today,

2    prior to hearings.

3            THE COURT:  So, in other words, and I'm sure

4    that's what counsel wanted to know -- I'm going to ask if

5    the baby does cry, please take him out automatically,

6    without having a court officer tell you to take him out.

7    We welcome everybody to our court, but if the baby acts up,

8    you have to take him out.  Thank you very much.

9            So, counsel, I'm sure you want to be able to

10   convey that to your client then?

11           MR. NEWMAN:  Yes, your Honor.

12           THE COURT:  As soon as the first witness steps in

13   the box this afternoon, the CPW 3 -- what was it?

14           MS. REDDAN:  Three to six, your Honor.

15           THE COURT:  Three to six is off the table.  Okay.

16           Thank you for clarifying that, sir.

17           MR. NEWMAN:  We can go off the record, Judge, if

18   you want, for calendaring.

19           THE COURT:  Fine.  Off the record.

20           (Off-the-record discussion held at the bench)

21           THE COURT:  We're adjourning until 2:20 and to

22   fix a trial date.

23           *       *       *       *       *

24           (At this time, a luncheon recess was taken, and

25   the hearing adjourned to 2:20 p.m.)

TJ004289

PROCEEDINGS                              6

1              A F T E R N O O N   S E S S I O N

2              THE CLERK:  Recalling number five, Indictment

3     3599 of 2015, in the matter of Tyquan Jackson and Ryan

4     Forde.

5              MR. NEWMAN:  Craig Newman, on behalf of

6     Mr. Forde.

7              MS. REDDIN:  Danielle Reddin, for the People.

8              MR. YAGGY:  Ross Yaggy, Y-A-G-G-Y, for the

9     People.

10             MR. NEWMAN:  I think we have a disposition,

11    Judge.

12             MS. REDDIN:  Yes, Judge.

13             THE CLERK:  Just in the matter of Ryan Forde.

14             Second call on Jackson.

15             (SECOND CALL)

16             *        *        *        *        *

17

18

19

20

21

22

23

24

25

TJ004290

PROCEEDINGS                          19

1

2

3                (Whereupon proceedings pertaining to defendant

4       Forde were stenographically recorded but are not being

5       transcribed at this time)

6

7

8                THE CLERK:  Recalling number five, Indictment

9       3599 of 2015, counsel.

10               MR. BOOTH:  Lipman and Booth, by Christopher

11      Booth, for the defendant.

12               MS. REDDIN:  Danielle Reddin, for the People.

13               MR. YAGGY:  Ross Yaggy, for the People.

14               THE COURT:  Very well.  The Court notes the

15      presence of the defendant.  I do want to put on the record

16      this matter was sent to me this morning around 11:45.  I

17      was trying to get the hearings going this morning, but

18      because of scheduling, I did meet with defense counsel and

19      the prosecutors to discuss scheduling of the three

20      witnesses that the People have for both hearings -- for

21      both defendants.  Defense counsel waived the defendant's

22      appearance.  I said I would put on the record anything that

23      was discussed.

24               The People indicated that they had a -- the

25      People indicated what their offer was for defendant

TJ004291

PROCEEDINGS                          20

1    Jackson, as well as defendant Forde.

2          People, do you want to state on the record what

3    your offer is to defendant Jackson and the reason why you

4    apparently have come off the possible original offer?

5          MS. REDDIN:  Yes, Judge.

6          My offer for defendant Jackson today is Criminal

7    Possession of a Weapon in the Second Degree, Count 1 on the

8    indictment, three-and-a-half years' jail.  Originally, it

9    was five-years' post-release supervision, I will be

10   changing that to three-years' post-release supervision for

11   this one-time offer as a courtesy to Mr. Booth; he asked me

12   for that.  Criminal Possession of a Controlled Substance in

13   the Fifth Degree, which is Count 10, and one-and-a-half

14   years' jail and two-years' post-release supervision, $1,654

15   in forfeiture money and a waiver of appeal.  Those two

16   counts are to run concurrent to each other and to run

17   concurrent to the defendant's three sentences on three

18   separate indictments, two BTC cases and one V.C.E. case,

19   where he received two years, and they are all running

20   concurrent to each other.

21          The reason for this offer, your Honor, is

22   because, in this case, while the defendant was out pending

23   sentence for his BTC cases, he was in possession of a

24   loaded pistol in this case, as well as over 500 milligrams

25   of crack cocaine which was recovered from his person at the

- LKG -

TJ004292

PROCEEDINGS                    21

1    precinct following his arrest.  That is a felony count for

2    cocaine.  So the People's offer is to run concurrent to his

3    violation sentence of two-years' jail on the BTC cases.

4              If the defendant would choose not to avail

5    himself of this offer today, the People, if we prevail,

6    will be taking the offer off the table and if we prevail at

7    trial, will be asking all the counts he's convicted of to

8    be running consecutive to each other.

9              THE COURT:  I understand, and, counsel, you can

10   correct me if I'm wrong, that the maximum sentence that

11   this defendant could receive for the top count of this

12   indictment, Criminal Possession of a Weapon in the Second

13   Degree, is 15 years, maximum; isn't that correct?

14             MS. REDDIN:  Yes, Judge.

15             MR. BOOTH:  Correct.

16             MS. REDDIN:  On the CPW 2 count.

17             THE COURT:  And the other, if he was convicted of

18   the Criminal Possession of a Controlled Substance in the

19   Seventh Degree -- I'm sorry --

20             MS. REDDIN:  In the Fifth Degree, your Honor.

21             THE COURT:  In the Fifth Degree, that would be

22   consecutive as well.

23             MS. REDDIN:  We would be asking for it

24   consecutive and consecutive to the pleas he's already taken

25   and been sentenced on on the BTC and V.C.E. cases.

- LKG -

1          THE COURT:  I know the People have two witnesses

2     here today?

3          MS. REDDIN:  Yes, Judge.

4          THE COURT:  And we can proceed.  I'm a trial

5     judge, as you all know.  And I'm ready to proceed to trial.

6     I know Mr. Booth from prior trials and cases; I know him to

7     be a very competent trial lawyer.  The D.A.'s before me are

8     both experienced prosecutors.  As I say, I know very, very

9     little about this case.  I do not make any threats and I do

10    not make any promises.  I will go along with the People's

11    recommendation/offer.

12          The Court wishes to say to the defendant that one

13    of three things happens after a trial.  The jury may not be

14    able to agree, it's called a hung jury, we do it all over

15    again.  I just finished a trial late this morning, a

16    two-week trial on a homicide, the defendant chose not to

17    avail himself of the People's offer and he was convicted of

18    the top count, Manslaughter in the First Degree, and he is

19    facing considerable jail time.

20          The jury can find you guilty of some or all of

21    the charges on this indictment and then you deal with me

22    and, certainly, I make no threat or promise as to what the

23    promised sentence would be because I don't know anything

24    about you and I don't know anything about the case, so I

25    make no threat or promise.  Usually, the sentence after

1    trial is considerably greater than what the People's offer

2    is.

3              The third thing that could happen, they could

4    find you not guilty and you go home and have a wonderful

5    life, but you still apparently have other matters to

6    contend with from Brooklyn Treatment Court and wherever

7    else.

8              There was a wonderful judge who possibly some of

9    the senior court officers may remember, Judge Thompson, who

10   went to the Appellate Division.  Judge Willie Thompson, who

11   used to say that before there is a verdict, a trial judge

12   can give mercy.  Mercy is what the People recommend and

13   what the judge imposes.  But after there is a verdict and

14   if that verdict is guilty, then the accused gets justice

15   and usually justice is a lot more than mercy.  But, again,

16   I don't know anything about you, I'm hearing just little

17   smidges here and there and I'm told by the prosecutor and

18   I'm also told by Mr. Booth that he understands that if you

19   don't take this offer, it's up to you, the offer is going

20   off the table.  Meaning, if they prevail at the hearing,

21   we'll set it down for a trial date, possibly sooner than

22   later.

23              Now, I know Mr. Booth told me he has one or two

24   other matters pressing, other judges are pushing him to

25   trial, but we would get a trial date, I believe in the next

TJ004295

PROCEEDINGS                    24

1    couple of weeks.  I'm open for trial right now.  I was

2    presuming I was going to start this trial.

3            So the decision, defendant, is a very important

4    decision for you to make.  And so often, we trial judges,

5    we get what are called 440s from people who are convicted

6    and are usually very far Upstate where they have two

7    seasons, July and winter, and those people say that, gee

8    whiz, I didn't fully understand what the D.A.'s offer was;

9    my lawyer didn't advise me; the lawyer didn't discuss it

10   with me; had I really known what the offer was, I would

11   have taken it, and, gee whiz, I'm up here way up in the

12   State of New York; gee whiz, Judge, I want the D.A.'s

13   offer.  I shouldn't have been found guilty.  I was guilty

14   but I didn't do it, whatever.

15           We see these things in papers.  A lot of times

16   they're pro se, written by the defendant.  Sometimes they

17   have the help of lawyers, but I always feel that the person

18   who is facing the Bar of the Criminal Justice System should

19   be fully aware of the consequences of their plea or their

20   refusal to plea.  There's one person in this courtroom

21   right now who knows what did or did not occur on May 10,

22   2015, in the County of Kings.  Possibly there may be some

23   witnesses outside who think they know what happened and

24   I'll certainly hear from them.

25           I want you to know, I am prepared to go forward

TJ004296

PROCEEDINGS                    25

1    right now.  If you want another minute to talk to your

2    attorney, fine.  If you don't and you understand what the

3    offer is and you don't want it, that's fine by me because

4    we are -- when I say "we," the Court, the staff, are ready

5    to proceed with the hearing.

6              So any questions, sir?

7              MR. BOOTH:  Your Honor, I just want to add one

8    thing for the record.  Over the lunch break, ADA Reddin

9    provided me with some new evidence regarding Facebook

10   pictures and listings which are bad for the defendant.

11   I've discussed those with the defendant, I have discussed

12   strategy, I have discussed our witness who is on alert.  I

13   am fully prepared to go ahead with the case, although I

14   have offered my client my advice, which was that he should

15   accept the offer.  I would also indicate for the record his

16   mother is in the audience and it's her position that he

17   should accept the offer, but at the end of the day, it's

18   his decision.  I agree with the Court.  Just let me have a

19   minute.

20             MS. REDDIN:  Yes, Judge, if I could just make a

21   record about the Facebook?

22             THE COURT:  Hold on, the D.A. wants to say

23   something.

24             MS. REDDIN:  There was a warrant done on the

25   defendant's Facebook, it's over five thousand pages long,

TJ004297

PROCEEDINGS                    26

1    so I do have to go through it, I just received it recently.

2    I was casually going through, over lunch, in which defense

3    counsel called me and I let him know there were some photos

4    of some guns.  It is multiple guns on his Facebook page

5    there are pictures of.  There are also random photographs

6    of the defendant engaging in drug-related activity and a

7    lot of conversations regarding drug-related activity as

8    well.  I do have to go through it and redact what is proper

9    and turn over whatever is proper to defense counsel prior

10   to trial.

11           Just so the defendant knows, it is his Facebook

12   account and I'm sure he knows what is on it, but we did do

13   a Facebook warrant and I have over five thousand pages on

14   Facebook.

15           THE COURT:  I just want to be clear.  You said if

16   the defendant chooses not to avail himself of the People's

17   offer, then the offer is off the table; is that correct?

18           MS. REDDIN:  That's correct.

19           THE COURT:  So that means if the first witness

20   walks in here, raises his or her hand and swears to tell

21   the truth, the offer is off?

22           MS. REDDIN:  The offer is off the table, we are

23   asking for it to be consecutive.  So even if he only got

24   convicted of Criminal Possession of a Weapon in the Second

25   Degree and is given the minimum of three-and-a-half, it

TJ004298

PROCEEDINGS                    27

1        would run following the two years he's already doing, so a

2        total of five-and-a-half years for what' he's incarcerated

3        for now, and that's the minimum.

4                    (Whereupon defense counsel conferred with the

5        People)

6                    MR. BOOTH:  Your Honor, I've spoken to my client

7        about all of these different things and after consulting

8        with me and listening to the record, he wishes to accept

9        the plea offer.

10                   THE COURT:  Very well.  So do you want to state

11       on the record again so then defense counsel can make his

12       application, so we get it clear?

13                   MS. REDDIN:  Sure, Judge.

14                   People's offer is Criminal Possession of a Weapon

15       in the Second Degree, which is Count 1 on the indictment,

16       three-and-a-half years' jail, three-years' post-release

17       supervision and Criminal Possession of a Controlled

18       Substance in the Fifth Degree, which is Count 10 on the

19       indictment, one-and-a-half years' jail, two-years'

20       post-release supervision, the forfeiture of $1,654 and

21       waiver of appeal.  Those two counts are to run concurrent

22       to each other and the defendant's two BTC sentences of

23       two-years' jail and V.C.E. sentence of two-years' jail.

24                   THE COURT:  All concurrent?

25                   MS. REDDIN:  That is all concurrent.

- LKG -

PROCEEDINGS                    28

1    Your Honor, defense counsel mentioned there is an

2    issue of possible forfeiture.  I'm not going to ask the

3    defendant sign the forfeiture forms today.  They are

4    alleging they have proof that that money was given to him

5    from a legitimate source, so before the sentencing, if I am

6    given that proof that it came from a legitimate source and

7    can verify it, then I'll take that off the table, but right

8    now, I'm including it because I don't have that paperwork

9    yet.

10    THE COURT:  Mr. Booth, you can explain to your

11    client, he looks like a pretty savvy guy, I am going to

12    make it part of my sentence, but if you and your client are

13    able to provide proof to the assistant district attorney

14    that that $1,654 was from a legitimate source, then I will

15    not pursue -- require him to sign the forfeiture papers.

16    But it behooves you and your client, as well as the

17    client's family, who look to be very attentive and very

18    responsible, if they can assist you in that regard, that

19    would make sense to do it in advance of the date of

20    sentencing.  Do you understand that?

21    MR. BOOTH:  I do, your Honor.

22    MS. REDDIN:  Just because of the Facebook, there

23    are numerous photographs, it's actually the defendant's

24    cover photo right now, is him with hundreds of dollars

25    spilled across his lap, so the People will be investigating

- LKG -

TJ004300

PROCEEDINGS                        29

1    as to whether or not this is legitimate, whether or not,

2    regardless of the paperwork given to us, we will be

3    investigating into it.

4             THE COURT:  Very well.  So you understand that?

5             DEFENDANT JACKSON:  Yes.

6             THE COURT:  Very well.

7             MR. BOOTH:  One other item.  I understand there's

8    the Gun Offender Registration that requires -- that goes

9    along with this plea.  I have reviewed the form with the

10   defendant and gone over the things that he must do, so we

11   understand that is going to be an additional component to

12   the plea.

13            THE COURT:  Very well.  And the Court looked into

14   this matter and there is what they call the GORA fee, but

15   that fee is only imposed if he should fail to register

16   timely; correct, D.A.?

17            MS. REDDIN:  Yes, Judge.

18            THE COURT:  That's apparently on the form as

19   well.

20            MR. BOOTH:  Your Honor, with that understanding,

21   my client has authorized me to withdraw his

22   previously-entered plea of not guilty and today plead

23   guilty to Criminal Possession of a Weapon in the Second

24   Degree and Criminal Possession of a Controlled Substance in

25   the Fifth Degree as articulated by the prosecution and with

TJ004301

1       all the terms and conditions the Court will set forth.

2                    THE COURT:  Very well.  And that's Count 1 and

3       Count 10 of this indictment.

4                    Now, counsel, is your client a U.S. citizen?

5                    MR. BOOTH:  Yes, he is.

6                    THE COURT:  Very well.  Let's swear the defendant

7       and we'll take his plea.

8                    THE CLERK:  Sir, raise your right hand.

9                    Do you swear or affirm to tell the truth, the

10      whole truth and nothing but the truth, so help you God?

11                   DEFENDANT JACKSON:  Yes.

12                   THE CLERK:  Thank you, you may put your hand

13      down.

14                   Please state your name for the record.

15                   DEFENDANT JACKSON:  Tyquan Jackson.

16                   THE CLERK:  Thank you.

17                   THE COURT:  Mr. Tyquan Jackson, do you speak and

18      understand English?

19                   DEFENDANT JACKSON:  Yes.

20                   THE COURT:  Are you on any medication, drugs,

21      alcohol or any other substance that would interfere with

22      you making a knowing and voluntary plea herein?

23                   DEFENDANT JACKSON:  No.

24                   THE COURT:  Are you a citizen of the United

25      States of America?

PROCEEDINGS                    31

1          DEFENDANT JACKSON:  Yes.

2          THE COURT:  Have you heard the application made

3     by your attorney, Mr. Booth, wherein he has moved this

4     Court to allow you to withdraw your previously-entered plea

5     of not guilty to all of the charges contained in this

6     Indictment 03599 of 2015, the top count being Criminal

7     Possession of a Weapon in the Second Degree, and now plead

8     guilty to Count 1, Criminal Possession of a Weapon in the

9     Second Degree, and Count 10, Criminal Possession of a

10    Controlled Substance in the Fifth Degree, in full

11    satisfaction of all charges against you under this

12    indictment; is that what you wish to do?

13         DEFENDANT JACKSON:  Yes.

14         THE COURT:  Are you satisfied with the services

15    of your attorney?

16         DEFENDANT JACKSON:  Yes.

17         THE COURT:  Has anyone threatened you or forced

18    you into taking this plea?

19         DEFENDANT JACKSON:  No.

20         THE COURT:  Now, do you understand that when you

21    do plead guilty, you give up certain rights, that is, the

22    right to a trial by jury or by this Court on the question

23    of your guilt or innocence; your right to remain silent;

24    your right not to incriminate yourself; your right to have

25    your attorney confront, that is, ask questions of any of

TJ004303

PROCEEDINGS                    32

1    the government's witnesses and also call witnesses in your

2    own behalf and you also give up your right to have the

3    People of the State of New York by the District Attorney's

4    Office of Kings County prove every element of the

5    government's case against you beyond a reasonable doubt.

6               Do you knowingly and voluntarily give up all of

7    those rights?

8               DEFENDANT JACKSON:  Yes.

9               THE COURT:  Has anyone threatened you or forced

10   you into taking the plea?

11              DEFENDANT JACKSON:  No.

12              THE COURT:  Now, even though you do plead guilty,

13   part of the People's offer is that you must waive, that is,

14   give up your right to appeal the conviction and the

15   sentence.  So there is a form in front of you.  I want you

16   to go over that form with your attorney.  If you have any

17   questions regarding that form, ask him, but then if you

18   agree to that, that is, to give up all your rights, you

19   sign that form.  I still will ask you questions because I

20   have to be complete that you understand what you're giving

21   up; I have to be fully satisfied that you're making a

22   knowing and voluntarily waiver of your right to appeal.  So

23   go over it with your attorney, read it.  If you agree to

24   it, sign it.

25              (Whereupon defense counsel conferred with the

TJ004304

PROCEEDINGS                    33

1    defendant)

2          MR. BOOTH:  Your Honor, I reviewed the waiver of

3    appellate rights with my client; I've answered his

4    questions; he and I have executed it.

5          THE COURT:  Very well.  Mr. Jackson, do

6    understand that by waiving your right to appeal the

7    sentence and conviction, that means that you cannot appeal

8    to a higher court, that would be the Appellate Division or

9    the Court of Appeals of the State of New York or to any

10   Federal Court or any other court; do you understand that?

11         DEFENDANT JACKSON:  Yes.

12         THE COURT:  In other words, it is final after you

13   take this plea and I sentence you.  In other words, you

14   cannot appeal any decision by any other judge in this Court

15   that may have touched this case dealing with grand jury

16   matters or any other decision by any other judge or

17   magistrate in this Court or the lower court.

18         Do you understand that?

19         DEFENDANT JACKSON:  Yes.

20         THE COURT:  Okay.  So the Court, having examined

21   the defendant in open court, the Court having observed

22   Mr. Booth conferring with his client, the Court noting that

23   both the defendant and Mr. Booth have signed this written

24   waiver of right to appeal, the Court having examined, that

25   is, asked the defendant questions in open court, it is this

TJ004305

1    Court's opinion that the defendant has made a knowing,

2    intelligent and voluntary waiver of his right to appeal the

3    conviction or any decisions by this Court and any -- and

4    the sentence that will be imposed on this defendant.  The

5    Court has signed same this sixteenth day of June and it may

6    be distributed by one of our fine court officers.

7                (Document handed to counsel)

8                THE COURT:  Very well.  Now, sir, is it true that

9    on or about May 10, 2015, in the County of Kings, that is,

10   Brooklyn, New York, you knowingly and unlawfully possessed

11   a loaded firearm, namely, a pistol, and such possession was

12   not in your home or place of business; is that true?

13               DEFENDANT JACKSON:  Yes.

14               THE COURT:  What type of weapon was it?

15               MS. REDDIN:  A .25-caliber pistol, color is

16   black.

17               THE COURT:  Is that true, a.25-caliber pistol,

18   colored black?

19               DEFENDANT JACKSON:  Yes.

20               THE COURT:  Very well.  Now, is it also true that

21   on or about May 10, 2015, in the County of Kings, that is,

22   Brooklyn, New York, you knowingly and unlawfully possessed

23   cocaine and said cocaine weighed 500 milligrams or more?

24               DEFENDANT JACKSON:  Yes.

25               THE COURT:  Was that crack cocaine?

1           DEFENDANT JACKSON:  Yes.

2           THE COURT:  Okay.  Now, has anyone made any

3     promise to you, that is, your attorney, the assistant

4     district attorney or anyone else, as to what the promised

5     sentence of this Court will be other than on the day of

6     sentence, I will sentence you to a determinate term in

7     State prison for three-and-one-half years, to be followed

8     by three-years' post-release supervision on Count 1,

9     Criminal Possession of a Weapon in the Second Degree.  In

10    addition, under that sentence, for the weapon, there is Gun

11    Offender Registration Act requirements which I know your

12    attorney has gone over with you, the form, which will

13    require you to do certain things upon release from State

14    prison, so you'll have to follow that.

15           There will be mandatory fines and surcharges in

16    this matter of $300, plus a $25 Crime Victim's Assistance

17    fee, plus a $50 DNA registration fee, all of which will be

18    deducted from your commissary account while you are

19    incarcerated and will be made a criminal fine upon your

20    release; I am not waiving same.

21           In addition, the promise of this Court is that on

22    the plea to the Criminal Possession of a Controlled

23    Substance in the Fifth Degree, which is Count 10, I will

24    sentence you to an indeterminate term in State's prison of

25    one-and-a-half years to two years -- no, one-and-a-half

TJ004307

PROCEEDINGS                           36

1    years, a determinate term, to be followed by two-years'

2    post-release supervision and those sentences will run

3    concurrent.  In other words, the one-and-a-half will run

4    current with the three-and-a-half.

5            In addition, there is a forfeiture of $1,654,

6    which, presumably, was money found upon you at the time of

7    the arrest.  The forfeiture papers will be presented at the

8    time of sentencing.  Your attorney has advised the Court,

9    and the D.A. has advised the Court, that if you're able to

10   show that that money is from a legitimate source and the

11   D.A.'s investigation of that source meets their

12   satisfaction, then the forfeiture won't be part of this.

13   If the D.A. feels that, based upon their investigation,

14   that that money is presumably in the custody of the police

15   department property clerk --

16           MS. REDDIN:  Yes, Judge, it was vouchered.

17           THE COURT:  Yes, if that is found to be from

18   illegitimate sources, that will be forfeited on the day of

19   the sentencing.  Do you understand that to be the promised

20   sentence of the Court on this matter?

21           DEFENDANT JACKSON:  Yes.

22           THE COURT:  Okay.  In addition, this Court has

23   been advised that you have two separate sentences for

24   Brooklyn Treatment Court.

25           MS. REDDIN:  Yes, Judge.  Actually, I wanted to

TJ004308

PROCEEDINGS                    37

1    clarify the record with the indictment numbers for those --

2              THE COURT:  In addition, there would be a

3    six-month driver's license suspension, if you have a

4    driver's license, in connection with the weapons violation.

5              Do you have a driver's license?

6              DEFENDANT JACKSON:  Learner's permit.

7              THE COURT:  Okay.  Since you don't have a

8    license, we'll just have to tell you what it would be.

9              Go ahead.

10             MS. REDDIN:  So the BTC cases he received a

11   sentence on already is Indictment Number, for the first

12   one, is 9468 of 2012 and --

13             THE COURT:  What's the sentence on that, two

14   years?

15             MS. REDDIN:  Two years, Judge.

16             And the second one is 4852 of 2012, as well as --

17             THE COURT:  Hold on, that's two years also?

18             MS. REDDIN:  That, I believe, was one year.  He

19   received two years on the prior indictment and then this

20   one year to run concurrent to that.  As well as, I was

21   mentioning the V.C.E. case, Violent Criminal Enterprises

22   Conspiracy case he pled guilty to and took two years, that

23   Indictment Number is 5804 of 2015.

24             THE COURT:  5804 of 2015.  What course was that,

25   E.C.B.?

TJ004309

PROCEEDINGS                    38

1           MS. REDDIN:  It was the Violent Criminal

2    Enterprises Unit in my office.  I believe he took -- do you

3    know where he took the plea, Mr. Booth?

4           (Whereupon defense counsel conferred with the

5    defendant)

6           MS. REDDIN:  I believe it was Part 40, Judge

7    Murphy, because that's where it tracks to, but I could be

8    wrong.

9           THE COURT:  As long as I have the right

10   indictment number.

11          THE CLERK:  Part 40.

12          THE COURT:  What did he get there?

13          MS. REDDIN:  Two years, your Honor, to run

14   concurrent to his sentences to BTC.

15          THE COURT:  In addition, this Court will run the

16   BTC Indictment Number 9486 of 2012, which is a two-year

17   sentence, that sentence will run concurrent with the

18   sentence imposed herein.  And there is apparently a

19   one-year sentence under 4852 of 2012, that is also to run

20   concurrent with the sentences here.  And there apparently

21   is another indictment, 5804 of 2015; is that right?

22          MS. REDDIN:  Yes, Judge.

23          THE COURT:  Where you've been sentenced to two

24   years there.  That will also run concurrent with the

25   sentences herein.  So all of the sentences are to run

- LKG -

TJ004310

PROCEEDINGS                    39

1    concurrent.  The fees and fines will be deducted from your

2    commissary account.

3              Is that accurate, D.A.?

4              MS. REDDIN:  Yes, Judge.

5              THE COURT:  Very well.  You understand that,

6    Mr. Booth; right?

7              MR. BOOTH:  I do, your Honor.  The client had one

8    question with respect to the DNA fee.  He was charged a DNA

9    fee on all those other indictments, so he would ask the

10   Court consider waiving it again.  How many times can they

11   take it?

12             THE COURT:  Unfortunately -- it used to be that

13   we can do that, but now the legislature, in its wisdom, has

14   said there's DNA on every conviction.  So application

15   denied, Mr. Booth.  Very well.

16             Do you understand that to be the promised

17   sentence of the Court?

18             DEFENDANT JACKSON:  Yes.

19             THE COURT:  Very well.  Do you have any questions

20   for your attorney regarding the plea and the promised

21   sentences?

22             (Whereupon defense counsel conferred with the

23   defendant)

24             DEFENDANT JACKSON:  No.

25             THE COURT:  Very well.  Are the People of the

TJ004311

PROCEEDINGS                    40

1      State of New York by the District Attorney's Office

2      satisfied with the allocution thus far?

3                  MS. REDDIN:  Yes, Judge.

4                  THE COURT:  Very well.  The Court is satisfied

5      with the plea.

6                  Please arraign the defendant on his plea.

7                  THE CLERK:  Sir, what is your true name?

8                  DEFENDANT JACKSON:  Tyquan Jackson.

9                  THE CLERK:  Is Mr. Booth, who stands beside you,

10     your attorney?

11                 DEFENDANT JACKSON:  Yes.

12                 THE CLERK:  Having been advised at arraignment

13     that a plea in this matter will subject you to a suspension

14     of your license to drive a motor vehicle for six months,

15     along with other penalties, as required by Section 510 of

16     the Vehicle and Traffic Law, you are instructed that on the

17     date of sentencing, you are to surrender to the Court your

18     license or permit to drive a motor vehicle.  You're also

19     advised that at the time of sentencing, a mandatory

20     surcharge and Crime Victim's Assistance Fee will be imposed

21     as required by Section 60.35 of the Penal Law.

22                 Sir, do you now wish to withdraw your

23     previously-entered plea of not guilty heretofore entered

24     under Indictment 3599 of 2015 and do you now wish to plead

25     guilty to Count 1, Criminal Possession of a Weapon in the

TJ004312

PROCEEDINGS                    41

1    Second Degree, and Count 10, Criminal Possession of a

2    Controlled Substance in the Fifth Degree, in full

3    satisfaction of this indictment; is that what you wish to

4    do, is plead guilty?

5              DEFENDANT JACKSON:  Yes.

6              THE CLERK:  The plea is entered.

7              THE COURT:  Very well.  We're going to put this

8    matter down for sentencing, how is June 29, for you,

9    Mr. Booth?

10             MR. BOOTH:  Can I check, your Honor?

11             THE COURT:  Sure.

12             MR. BOOTH:  That's fine.

13             THE COURT:  I'm just going to suggest, Mr. Booth,

14   while you have mom here and family, you may want to find

15   out where his permit is so that can be surrendered, if you

16   can.

17             MR. BOOTH:  He's been incarcerated now for quite

18   some time.

19             THE COURT:  It's probably expired.

20             MR. BOOTH:  The defendant had one other question

21   about the GORA registration.  If he resides outside of New

22   York, what are his responsibilities thereto?

23             THE COURT:  I believe, and I'll double-check

24   between now and sentencing, that basically as soon as he's

25   released from State custody, he should report to probably

- LKG -

TJ004313

PROCEEDINGS                          42

1    the nearest precinct here in the State of New York and then

2    possibly -- he may be required to go to his home state as

3    well.

4              THE CLERK:  Within 48 hours.

5              THE COURT:  Since he's not going to be a

6    resident --

7              MR. BOOTH:  His question is if he moves outside

8    of New York during the four-year period, according to the

9    registration, when I read the forms, all the instructions

10   were if you live in New York, it didn't say what you must

11   do if you live outside.

12             THE COURT:  We can look into it further.  I'll

13   ask the D.A. to take a look into it as well.

14             MS. REDDIN:  Sure, Judge.

15             THE COURT:  Very well.  Remand on the defendant.

16             Thank you.

17             MS. REDDIN:  Thank you, Judge.

18                  *      *      *      *      *

19              CERTIFIED TO BE A TRUE AND ACCURATE

20              TRANSCRIPT OF THE MINUTES TAKEN IN THE

21              ABOVE-TITLED PROCEEDING.

22

23                        _____
                          LAUREN K. GANZMAN
24                        SENIOR COURT REPORTER

25