UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 19-CR-356 (ARR) |
| — against — | |
| | Not for print or electronic publication |
| TYQUAN JACKSON, | |
| *Defendant*. | Opinion & Order |

ROSS, United States District Judge:

The government moves to preclude defendant from cross-examining its witness, Detective Kevin Deleon, about the material disclosed in its letter on November 27, 2020. Gov't's Letter, ECF No. 114. The defense opposes and seeks to inquire into a 2009 investigation by the Civilian Complaint Review Board ("CCRB") on cross-examination. Def.'s Opp'n, ECF No. 120; Def.'s Suppl. Opp'n, ECF No. 124.

## BACKGROUND

The government anticipates calling Detective Kevin Deleon to testify that he participated in a car stop in May 2015 during which he found defendant, Tyquan Jackson, and one of his fellow passengers to be in possession of firearms. Gov't's Letter 1–2. Det. Deleon is expected to testify that Mr. Jackson possessed a loaded Phoenix Arms HP25A semi-automatic handgun, which is the "modern equivalent" of the firearm he is accused of possessing in the present case, and that the other passenger possessed a Raven Arms MP-25 semi-automatic handgun, which is the identical make and model of the gun at issue in the present case. *Id*. at 2.

1

Consistent with its obligations under *Giglio v. United States*, 404 U.S. 150 (1972), the government disclosed summaries of several allegations against Det. Deleon, including a CCRB investigation from April 2009, which substantiated claims of abuse of authority against Det. Deleon. Gov't's Letter 2–3; *see also* CCRB Report, ECF No. 114-1. The CCRB investigator credited Det. Deleon's account of the stop and frisk, in which he stated that he saw the complainant "clenching his waistband, with both hands gripping the front belt buckle" but did not observe "any bulges on [the complainant's] person," and concluded that these observations did not constitute reasonable suspicion that the complainant was carrying a weapon. CCRB Report 5, 10. Det. Deleon's account conflicted with his earlier Stop, Question and Frisk report, in which he indicated that he observed a bulge on the complainant's waistband. *Id.* at 7, 9.

## LEGAL STANDARD

Federal Rule of Evidence 608(b) permits the court to allow specific instances of a witness's conduct to be inquired into on cross-examination "if they are probative of the character for truthfulness or untruthfulness of . . . the witness." The district court has "discretion to permit or deny a line of inquiry on cross-examination." *United States v. Cruz*, 894 F.2d 41, 43 (2d Cir. 1990) (citing *United States v. Pedroza*, 750 F.2d 187, 195 (2d Cir. 1984), *cert. denied*, 479 U.S. 842 (1986)); *see also United States v. Scarpa*, 913 F.2d 993, 1018 (2d Cir. 1990) ("It is settled that '[t]he scope and extent of cross-examination lies within the discretion of the trial judge.'" (quoting *United States v. Blanco*, 861 F.2d 773, 781 (2d Cir. 1988), *cert. denied*, 489 U.S. 1019 (1989))).

The court may preclude cross-examination if the prior conduct is not probative of truthfulness or if, under Federal Rule of Evidence 403, its "probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue

2

delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403; *United States v. Flaharty*, 295 F.3d 182, 191 (2d Cir. 2002). "While a district court may impose reasonable limits on cross-examination to protect against, e.g., harassment, prejudice, confusion, and waste . . . it must also give wide latitude to a defendant in a criminal case to cross-examine government witnesses." *United States v. Cedeño*, 644 F.3d 79, 82 (2d Cir. 2011) (citations and internal quotation marks omitted). A court's "decision to restrict cross-examination will not be reversed absent an abuse of discretion." *United States v. Lawes*, 292 F.3d 123, 131 (2d Cir. 2002) (quoting *United States v. Rosa*, 11 F.3d 315, 335 (2d Cir. 1993)), and "[a] trial judge does not abuse his discretion by curtailing cross-examination as long as the jury has 'sufficient information to make a discriminating appraisal of the particular witness's possible motives for testifying falsely in favor of the government.'" *Scarpa*, 913 F.2d at 1018 (citing *United States v. Singh,* 628 F.2d 758, 763 (2d Cir.), *cert. denied,* 449 U.S. 1034 (1980)).

In analyzing the admissibility of substantiated allegations related to the witness's character for truthfulness, the court should consider the seven factors laid out in *United States v. Cedeño*:

(1) "whether the prior judicial finding addressed the witness's veracity in that specific case or generally";

(2) "whether the two sets of testimony involved similar subject matter";

(3) "whether the lie was under oath in a judicial proceeding or was made in a less formal context";

(4) "whether the lie was about a matter that was significant";

(5) "how much time had elapsed since the lie was told and whether there had been any intervening credibility determination regarding the witness";

3

> (6) "the apparent motive for the lie and whether a similar motive existed in the current proceeding"; and
>
> (7) "whether the witness offered an explanation for the lie and, if so, whether the explanation was plausible."

644 F.3d at 82–83. The Second Circuit first formulated the governing test in *United States v. Cruz*, 894 F.2d 41 (2d Cir. 1990), which enunciated only the first two factors. Two years later, in *Cedeño*, the circuit found that in some cases reliance on the two *Cruz* factors alone "could unduly circumscribe . . . a trial court's discretion" and proposed five additional factors for consideration. 644 F.3d at 82–83. These factors are "non-exhaustive," *United States v. White*, 692 F.3d 235, 249 (2d Cir. 2012), and the district court may consider "other factors affecting the probity and relevancy of a prior court's finding that a witness had lied," *Cedeño*, 644 F.3d at 83.

## DISCUSSION

The government argues that the 2009 CCRB finding against Det. Deleon "ha[s] no bearing whatsoever on the likelihood that the witness would mislead a jury in 2020" because it is unrelated to his character for truthfulness and is over a decade old. Gov't's Letter 5 (citing *United States v. Laster*, 06-CR-1064 (JFK), 2007 WL 2872678, at *2 (S.D.N.Y. Sept. 28, 2007) (precluding inquiry into a substantiated CCRB finding because it did not bear on the witness's credibility and occurred "more than three years prior to the events giving rise to the charges in the instant case")). Defendant, in contrast, argues that the inconsistency between Det. Deleon's version of events provided to the CCRB and his earlier Stop, Question, and Frisk report is probative of his character for untruthfulness because it "necessarily meant that Det. Deleon was dishonest in filling out the frisk report." Def.'s Opp'n 2. Defendant notes that the Stop, Question, and Frisk form that Det. Deleon would have filled out includes a checkbox for "Suspicious

4

Bulge/Object (Describe)," but no checkbox for "bulge at waistband" or "hard object."[1] Def.'s Suppl. Opp'n 1; Stop, Question, and Frisk Report, ECF No. 124-1. The CCRB Report states that the bases for the stop and search recorded in Det. Deloen's Report included "bulge at waistband." CCRB Report 7. Therefore, defendant concludes, Det. Deleon must have *written* "bulge at waistband" on the form, making it more likely that he deliberately lied as opposed to making a simple clerical error. Def.'s Suppl. Opp'n 1.

     I agree with the government that the CCRB Report does not contain an adverse credibility finding against Det. Deleon and is not probative of his character for untruthfulness. The CCRB credited Det. Deleon's version of events—which went against his self-interest— which suggests that the CCRB found him to be a reliable and truthful witness. Defendant speculates that Det. Deleon has a motive to lie in the present trial because he "must have learned that being honest with questioners can sometimes be detrimental to his self-interest." Def.'s Opp'n 2. However, one could just as easily speculate that Defendant Deleon told the truth to the CCRB investigators, knowing that it would lead to negative professional consequences, because he understood the importance of testifying truthfully. Ultimately, the fact that the CCRB noted an inconsistency eleven years ago between Det. Deleon's credible account during the investigation and his earlier frisk report does not reflect on his ability to be a credible witness in Mr. Jackson's trial.

     Even if it did, the *Cedeño* factors would weigh against admission. As to the first two *Cedeño* factors, the CCRB finding affirmed the veracity of Det. Deleon's account, and the two sets of testimony—one regarding an unjustified stop, search and frisk and the other regarding a

---

[1] As the government notes, there is in fact a checkbox for "hard object" in the "Was Person Searched?" section of the form. Gov't's Reply 1 n.1; Stop, Question and Frisk Report.

car stop that resulted in the discovery of two illegal firearms—did not involve similar subject matter. As to the third factor, Det. Deleon's brief assertion, even if characterized as a lie, was made in a professional context, although a far less formal context than a CCRB investigation or a judicial proceeding. Moreover, although it was about a matter of significance, as it concerned the basis for a stop, search and frisk (fourth factor), more than a decade has passed since it was made, and afterward Det. Deleon gave a correct account of the incident which was credited by the CCRB (fifth factor). As to the sixth factor, the motives to lie are different, because the motive in the first case was to justify an improper stop and the motive in the present case would be to secure a conviction of Mr. Jackson. Finally, although Det. Deleon did not offer an explanation for the discrepancy, he remedied it with his truthful account during the CCRB investigation. Overall, the very small probative value of an eleven-year-old inconsistency would be substantially outweighed by the danger of wasting time and confusing the issues. Fed. R. Evid. 403.

## CONCLUSION

For the foregoing reasons, I grant the government's motion to preclude defendant from inquiring into the 2009 CCRB investigation, or any other Giglio material provided in the November 27, 2020 letter, in its cross-examination of Detective Deleon.

SO ORDERED.

Dated: December 4, 2020
      Brooklyn, NY

                                                  _/s/_____
                                                  Allyne R. Ross
                                                  United States District Judge