UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>— against —<br><br>TYQUAN JACKSON,<br>     *Defendant*. | **No. 19-CR-356 (ARR)**<br><br>**Not for print or electronic publication**<br><br>**Opinion & Order** |

ROSS, United States District Judge:

  The government moves to admit evidence of defendant, Tyquan Jackson's, gang membership as part of its direct case pursuant to Federal Rule of Evidence 404(b). The defense opposes and moves for the evidence to be precluded. For the reasons set forth below, the government's motion is denied.

## BACKGROUND

  When Mr. Jackson was admitted to Riker's Island pending adjudication of prior criminal charges, he identified himself to the New York City Department of Corrections ("DOC") staff as an active member of the Bloods gang. Gov't's Mots. Lim. 3 ("Gov't's Mot."), ECF No. 75. The government also provided evidence of Mr. Jackson's visits with known gang members while incarcerated. Gov't's Mot. 3. On November 21, 2020, the government filed a supplemental memorandum containing images from Mr. Jackson's Facebook account, which the government alleges contain references to the Bloods gang, including "red bandanas, the 'blood drop' emoji, and a hand-sign intended to look like a lower-case 'b.'" Gov't's Supp. Letter 3, ECF No. 108.

1

## DISCUSSION

Federal Rule of Evidence 404(b)(1) provides that "[e]vidence of [a] crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Nevertheless, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The Second Circuit has adopted an "inclusionary approach" to Rule 404(b) evidence, which "allows evidence 'for any purpose other than to show a defendant's criminal propensity.'" *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (quoting *United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir. 1992)); *see also United States v. Levy*, 731 F.2d 997, 1002 (2d Cir. 1984) (noting Rule 404(b) sets forth only a "non-exhaustive list of purposes for which other act or crime evidence may be admitted").

However, "this inclusionary approach does not invite the government 'to offer, carte blanche, any prior act of the defendant in the same category of crime.'" *United States v. McCallum*, 584 F.3d 471, 475 (2d Cir. 2009) (quoting *Garcia*, 291 F.3d at 137). Such evidence is also still subject to balancing under Rule 403 and "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Pitre*, 960 F.2d at 1119. Where the Rule 404(b) evidence "involve[s] conduct more inflammatory than the charged crime," the evidence should be excluded on the grounds of unfair prejudice under Rule 403. *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006) (quoting *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999)).

The government argues that the evidence of Mr. Jackson's gang membership is

2

admissible under Rule 404(b) because it would help demonstrate his motive for carrying a firearm and would help explain why DNA from multiple individuals was found on the firearm Mr. Jackson is accused of possessing. Gov't's Mot. 9. In opposition, the defense argues that the evidence of gang membership is speculative and highly prejudicial. Def.'s Opp'n to Gov't's Mot. 6–7 ("Def.'s Opp'n."), ECF No. 86. Furthermore, the presence of multiple individuals' DNA can be explained by the likelihood that the gun originated out of state and passed through other sets of hands before reaching New York. *Id.*

I agree with Mr. Jackson and find that the evidence of his gang membership is inadmissible. In each of the cases cited by the government, the evidence of the defendant's gang membership was more directly relevant to the facts at issue. In *United States v. Gaines*, the gang evidence was "an *unavoidable incident* of presenting other permissible evidence" because the case "concern[ed] the *mere fact* of [the] defendant's gang membership." 859 F.3d 1128, 1131 (8th Cir. 2017) (quoting *United States v. Payne-Owens*, 845 F.3d 868, 873 (8th Cir. 2017)) (emphasis in original). In *Gaines*, the defendant was standing in a parking lot known to be part of a local gang's territory with several other gang members at the time of his arrest. *Id.* at 1129. The defendant and his associates were wearing gang colors, and the defendant had two gang-related tattoos on his body. *Id.* at 1129–30. Evidence of the defendant's gang membership was therefore relevant to "multiple aspects of th[e] case," including the defendant's presence at the scene of the arrest, the significance of his tattoos and clothes, and "the reason that the officers were there that day, the steps they took that day, and the reason that they stopped that day." *Id.* at 1130, 1132. Similarly, in *United States v. Molton*, the defendant was arrested for gun possession in a location that was being monitored by police for gang violence. 743 F.3d 479, 481 (7th Cir. 2014). The defendant's cellmate also testified at trial that the defendant was a member of a gang and had

3

acquired the gun at a fellow gang member's house in the wake of a shooting. *Id*. at 482. Therefore, as in *Gaines*, the gang evidence was "relevant to multiple aspects of the case: the overarching factual scenario at issue, [the defendant's] presence at the scene, and why he would have a rifle." *Id.* (quotations omitted).

Gang evidence was also central to the facts of the case in *United States v. Williams*, 930 F.3d 44 (2d Cir. 2019). In *Williams*, police were present at the scene of the arrest because they expected violence outside a funeral home during services for a deceased gang member. *Id.* at 50–51. Furthermore, the defendant had admitted to being a member of the gang in the context of offering to help police locate more guns, making the evidence more probative of a specific opportunity and motive to possess a firearm. *Id.* at 63. And in *United States v. Bacote*, the defendant, who was a member of the Bloods gang, had been shot in the abdomen two weeks prior to his arrest for gun possession. No. 15-CR-378 (FB), 2016 WL 1089260, at *1 (E.D.N.Y. Mar. 18, 2016). The defendant's gang membership was therefore more probative of his motive for carrying a gun, as he had recently been involved in a violent encounter and may have had a specific motive to retaliate or protect himself.

In Mr. Jackson's case, by contrast, evidence of his gang membership is not directly tied to the "overarching factual scenario" of the case. *Molton*, 743 F.3d at 482. As the defense notes, the probative value of the gang evidence in explaining the presence of multiple individuals' DNA on the firearm is weak because this finding can be easily explained by other factors. Def.'s Opp'n 7. And the fact that gang members generally have a greater tendency to carry weapons, without a more specific relevance to the facts at issue, is not enough to outweigh the danger of unfair prejudice. Fed. R. Evid. 403. Here, the danger of unfair prejudice is substantial; membership in the Bloods gang, which is notorious for its violence and criminality, is "more

inflammatory than the charged crime" of being a felon in possession of a firearm. *Paulino*, 445 F.3d at 223.

## CONCLUSION

For the foregoing reasons, the government's motion to introduce evidence of Mr. Jackson's membership in the Bloods gang is denied.[1]

SO ORDERED.

Dated: January 7, 2021
 Brooklyn, NY

_____/s/_____
Allyne R. Ross
United States District Judge

---

[1] The remaining uncontested motions in limine by the government are granted. Gov't's Mot. 3–5, 12–15 (motions to: (1) preclude defense from making arguments about legality of defendant's stop and seizure; (2) preclude defense from introducing defendant's prior self-serving statements as evidence; (3) preclude defense from mentioning consequences attendant to conviction; (4) preclude defense from mentioning defendant's medical treatment following arrest; and (5) preclude defense from raising disbanding of anti-crime squad). As for the government's motion to introduce evidence that Mr. Jackson deleted his Facebook account to show consciousness of guilt, Gov't's Supp. Letter 5–6, my decision is forthcoming.