# JAMES LAYTON KOENIG
## ATTORNEY AT LAW
305 BROADWAY, SUITE 1001
NEW YORK, NEW YORK 10007
TELEPHONE (212) 822-1439
FAX (646) 304-2865
JLKOENIG62@AOL.COM

<u>By ECF</u>

The Honorable Allyne R. Ross
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   United States v. Tyquan Jackson
      Criminal Docket No. 19-356 (ARR)

Dear Judge Ross:

The defense respectfully moves this Honorable Court for conditional release of Tyquan Jackson pending the trial of this matter for the reasons set forth below. Due to protocols implemented by the Federal Bureau of Prisons ("BOP") and the Metropolitan Detention Center, Brooklyn ("MDC") to address the Covid-19 pandemic, Jackson has spent approximately 2 months in conditions that are effectively "solitary confinement" or "Special Housing Unit" ("SHU") conditions. Because placement into such conditions requires Due Process under the Fifth Amendment, and Jackson has been deprived of such, he should be released. *See United States v. Gonzales Claudio*, 806 F2d 334 (2d Cir. 1986).

<u>*MDC Non-SHU Conditions Prior to Covid-19*</u>

Prior to the Covid-19 pandemic, non-SHU inmates at the MDC were allowed several hours a day outside their cell. "On a typical day, MDC Brooklyn Correctional Officers release non-SHU inmates from their cells at 6 a.m. and inmates can occupy the housing unit common area until they are secured for the evening following a 9:30 p.m. inmate accountability check." U.S. DOJ Office of Inspector General, Evaluation and Inspections Division 19-04: *Review and Inspection of Metropolitan Detention Center Brooklyn Facilities Issues and Related Impacts on Inmates* (September 2019) 2 ("OIG Sept. 2019 Report") (Exhibit A).

"Throughout the day, inmates can eat and socialize in the common area; attend Education, Religious, or Psychology Department programming; and utilize unit recreation facilities, such as a caged recreation deck with outdoor exposure. During the normal course of operations, inmates can also use: private showers located in the common area; laundry machines to wash personal clothing; phones to speak with family, friends, and legal counsel; unmonitored phones that connect to the Federal Defenders of New York; and monitored computers to perform legal research, request nonemergency medical attention, refill prescriptions, and communicate with friends and family.", *Id*. at 2-3.

1

*MDC SHU Conditions Prior to Covid-19*

As expected, prior to Covid-19, inmates placed in SHU were subject to more restrictive conditions. By way of general background, the BOP places inmates in SHU either for "Administrative Segregation" ("when they are under investigation for misconduct and/or criminal behavior, they need to be separated from other offenders for security reasons, or they are awaiting transfer/or in-transit (holdover) status") or for "Disciplinary Segregation." Fed. Bureau of Prisons *Statistics*: *Restricted Housing*, last updated February 15, 2021 available at https://www.bop.gov/about/statistics/statistics_inmate_shu.jsp. (Exhibit B).

According to the BOP, "[i]nmates in the SHU are confined to their cells for 23 hours per day and are allowed 1 hour of outdoor recreation time [per day]". OIG Sept. 2019 Report at 3. They may be "housed either alone or with other inmates." Fed. Bureau Of Prisons 5270.11 *Program Statement: Special Housing Units* (November 23, 2016) 2. ("SHU Program Statement") (Exhibit C). "Unlike cells in regular housing units, SHU cells have a shower." OIG Sept. 2019 Report at 3.

*Jackson's Current Conditions at MDC*

Currently the BOP facilities are operating under modified conditions in order to mitigate the spread of Covid. The most recent iteration of the BOP Modified Operations is available on the BOP website, https://www.bop.gov/coronavirus/covid19_status.jsp, last updated, November 25, 2020, retrieved, February 15, 2021 ("BOP Modified Operations") (Exhibit D). It appears that modified operations have been in effect in one form or another since the advent of the pandemic, *See* Memorandum and Order, *Chunn et al. v. Warden Derek Edge*, 20-cv-1590 (RPK) (RLM),ECF. No. 62, 20 ("Male inmates are now secured in their cells for at least 23 hours each day to reduce contacts that could spread the virus.") (Exhibit E).

According to the BOP Modified Operations, "inmates are limited in their movements to prevent congregate gathering and maximize social distancing. Essential inmate work details, such as Food Service, continue to operate with appropriate screening. Inmate movement in small numbers is authorized for the following purposes: Commissary; Laundry; Showers three times each week; Telephone, to include legal calls, and access to TRULINCs." BOP Modified Operations.

Jackson reports that the way these operations have been carried out for his unit at the MDC since December 2020, is to allow him outside his cell for a half hour 3 times a week, on Monday, Wednesday and Friday. These three half hour intervals are the only times he has to take showers, make phone calls, send or receive email via Corrlinks, and visit the law library. He has had no access to the commissary for food or other personal items since December. Aside from the three half hour time periods, Jackson spends the rest of the week confined in a 8 by 10-12 foot cell with one other inmate. The cell contains a bunk bed, a toilet, and a small desk. Unlike a typical MDC SHU cell, the cell does not contain a shower.

These conditions are corroborated by the DOJ Office of Inspector General in a report on the MDC covering between April 30, 2020 to June 10, 2020, with some follow up from September 2020. U.S. DOJ Office of Inspector General, 21-002: *Pandemic Response Report:*

*Remote Inspection of Metropolitan Detention Center Brooklyn* (November 2020) 2 ("OIG Nov. 2020 Report") (Exhibit F).  The OIG reported, "[d]uring our fieldwork, inmates remained in their cells and were allowed out in small groups at designated times for 1 hour per day, 3 days per week, to access showers, phones, and TRULINCS terminals. The initial decision was to allow inmates 30 minutes of out-of-cell time, but the Warden told us that he realized this was not enough and extended it to 60 minutes." *Id*. at 2.

Thus, it appears that currently the MDC has reverted to the 30 minutes out-of-cell intervals per week, as opposed to an hour.  However, even if Tyquan were allowed 1 hour, three times a week, this would still be less than half the out-of-cell time that typical SHU inmates would receive in ordinary, pre-pandemic conditions.  By locking inmates in their cells for 23 or more hours a day, the "MDC's lockdown of male inmates is arguably more protective than any of the social distancing measures suggested in CDC guidance." Memorandum and Order, *Chunn et al. v. Warden Derek Edge*, 20-cv-1590 (RPK) (RLM), ECF. No. 62, 21.

In addition, this office has recently learned that the MDC has begun allowing in-person counsel visits for other inmates, but not for Jackson.  On February 17, 2021, this office spoke with MDC staff attorney Sophia Papapetru who stated that Jackson is in a unit that is more restrictive than other units who are allowed in-person attorney visits.  Ms. Papapetru stated she could not disclose to this office why Jackson was in such a unit or even what unit he is in.

ARGUMENT

I. Jackson should be released because his conditions of confinement and the indefiniteness of such as a pre-trial detainee violate due process.

The Covid-19 pandemic has presented novel challenges to our legal system and beyond.  Nevertheless, our legal system is equipped for such challenges because our constitution was "intended to endure . . . and . . . be adapted to various crises of human affairs." *McCulloch v. Maryland*, 17 U.S. 159, 203 (1819).  These times present novel legal questions regarding conditions of confinement and due process.

"In mandating fundamental fairness, the Due Process Clause endeavors to set outer limits at which risks to society must be accepted to avoid unconscionable deprivations of . . . liberty." *United States v. Gonzales Claudio*, 806 F2d 334, 343 (2d Cir. 1986).  For prisoners, courts have repeatedly affirmed that the Due Process Clause can be implicated both where pre-trial detention is too long, or where conditions of confinement are "atypical" and a "severe hardship." such as solitary confinement,. *E.g.*, *Colon v. Howard*, 215 F3d 227, 229 (2d Cir. 2000).  Where a Due Process Clause violation is demonstrated, a detention order should be vacated and reasonable conditions of release set in accordance with 18 U.S.C. § 3142(c). *United States v. Gonzales Claudio*, 806 F2d at 343.  Here, Jackson's confinement combines both types of violations.

*Conditions of Confinement as Due Process Violation*

The current conditions of Jackson's confinement are the same or worse than conditions found to require Due Process.  Conditions of confinement implicate the Due Process Clause

3

where they are "atypical and [a] significant hardship on the inmate in relation to the ordinary incidents of prison life." *Colon*, 215 F3d 228-229 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).  In evaluating whether conditions meet the standard of "atypical" and "significant hardship," the "comparison required . . . is not between . . . SHU terms received by others who were convicted of misbehavior.  [But rather] whether [the petitioner's] deprivation was more serious than typically endured by prisoners as an ordinary incident of prison life." *Welch v. Bartlett*, 196 F3d 389, 394 (2d Cir. 1999).  To that end, although it has been argued that "confinement to one's cell for half the day has some similarity to such confinement for 23 hours a day*, the difference seems to us to be great*." *Id.* at 393 (emphasis added).

　　While longer periods of SHU confinement are more likely to trigger the Due Process Clause, *Sealey v. Giltner*, 197 F.3d 578 (2d Cir. 1999) (no Due Process interest for inmate confined for 101 days in SHU), the duration of the confinement is not dispositive. *Colon,* 215 F3d 227.  "Both the conditions and their duration must be considered," since "harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Id*. at 231 (internal citations omitted).  Thus, "SHU confinements of fewer than 101 days could constitute atypical and significant hardships *if the conditions were more severe than the normal SHU conditions." Palmer v. Richards* 364 F3d 60, 65 (2d Cir. 2004) (emphasis added) (internal citations omitted).

　　For example, courts have found that a reasonable jury could find conditions "atypical" and a "significant hardship" when endured for 77 days where the inmate "was being deprived his property, [i.e.,] personal clothing, grooming equipment, hygienic products and materials, reading materials, writing materials, school books, personal food and vitamin supplements, family pictures as well as personal correspondences, being mechanically restrained whenever this plaintiff was escorted, and being out of communication from his family." *Palmer* 364 F3d at 66.

　　Even a period of only 41 days in SHU could be "atypical" and a "significant hardship" where an inmate alleged "that he was kept in his cell twenty-four hours per day," and "that he was subjected to unhygienic conditions, specifically alleging that (1) his cell had no furniture, and thus all items, including his clothes and food tray, had to be kept on the floor; (2) that his mattress was "infected" with body waste; and (3) that his cell was subject to "daily" flooding, and feces and urine. *Davis v. Barrett*, 576 F3d 129, 134 (2d Cir. 2009).

　　Here, unlike more typical SHU confinement conditions like in *Colon,* 215 F3d 227, where an inmate is allotted an hour out of the cell seven days a week, Jackson is only let out three times a week for a half hour.  These are the only opportunities he has to perform needs like showering, communicating with family or counsel, and visiting the law library.  Because he cannot effectively do more than one of these activities in one allotted interval, he effectively has to choose between showering or communicating with family or counsel.  Had he been a prisoner punished with SHU in the pre-Covid times, he would have been allowed out seven times a week for an hour each, and at least would have had access to a shower in his cell.  The conditions Jackson has been in since December 2020 constitute an "atypical" and "significant hardship" within the meaning of the Due Process Clause.

4

*Indefiniteness and Length of such Confinement as Due Process Violation*

Compounding the harsh, restrictive conditions of confinement is that it is indefinite. Had it not been for the pandemic, Jackson's pre-trial detention would have come to a natural conclusion with trial. Authorities now can only guess when the current restrictions will be lifted. Courts have upheld the constitutionality of the current bail statutes, in part, because "the maximum length of pretrial detention is limited by the stringent time limitations of the Speedy Trial Act." *United States v. Salerno*, 481 US 739, 747 (1987). It is worth considering that a "ninety-day period specified in section 3164(b), . . . provides at least a point of reference in our consideration of the constitutional limit on such detention." *Gonzales Claudio*, 806 F2d at 340-341.

Under the test set forth in *Gonzales Claudio*, along with the length of time in pre-trial detention, other factors that should be considered are: how much responsibility the prosecution bears for the trial delay, and "the strength of the evidence indicating risk of flight." *Id.* at 343. Concededly, the prosecution here bears no responsibility for the delay in starting trial. However, on a whole, the factors weigh in favor of release. The evidence indicates that Jackson is not a flight risk. He has a home address that Pre-Trial Services has already approved for home confinement and where he stayed under electronic monitoring for six months. On October 26, 2020, his Pre-Trial Service officer, Ramel Moore, stated that Jackson had been compliant with the conditions of his release. For what it's worth, he did appear in court when it was apparent there was a strong likelihood of being ordered detained.

In total, Jackson has currently spent 403 days incarcerated on the instant charges. Due to the interim Administrative Orders regarding Covid, he is not accruing time under the Speedy Trial Act, and it is not possible to pinpoint a date when the trial will start. Finally, unlike the detention challenged in *Gonzales Claudio*, 806 F2d, 334, where the conditions of confinement were not at issue, Jackson is under conditions atypical even for SHU, a Due Process violation in its own right.

II.    Releasing Jackson will not create a floodgate issue.

Allowing supervised release of Jackson will not create a floodgate problem in which all prisoners during the Covid pandemic would have to be released. Due process claims are evaluated "on a case-by-case basis, since due process does not necessarily set a bright line." *Gonzales Claudio*, 806 F2d. at 340. Jackson's case is unique because he is clearly intent on not pleading guilty and taking his case to trial, something that only 2% of cases do. Gramlich, John, *Only 2% of Federal Criminal Defendants Go To Trial, And Most Who Do Are Found Guilty*, Pew Research Center, June 11, 2019 (Exhibit G). All the pre-trial decisions have been made. There are no pending items in this case other than trial itself, which would have begun on December 7, 2020 had it not been for the most recent Covid shutdowns.

For the reasons set forth above, the defendant respectfully moves this Court to grant Jackson's conditional release pending trial.

Dated: New York, NY
       February 17, 2021

                         Respectfully submitted,

                         __/s/_____
                         James Layton Koenig, Esq.
                         305 Broadway, Suite 1001
                         New York, NY 10007
                         (212) 822-1439
                         jlkoenig62@aol.com

                         Heather Stepanek, Esq.
                         Of Counsel
                         305 Broadway, Suite 1001
                         New York, NY 10007
                         (347) 573-0457
                         heather.stepanek@gmail.com